We will hear argument in No. 13-1561, ScriptPro v. Innovation Associates. Mr. McAllen, when you're ready. Thank you, Your Honors. May it please the Court. This is a relatively rare case in that the district court invalidated ScriptPro's assertive claims for lack of written description on summary judgment when the assertive claims had never changed over their original versions vis-à-vis the relevant limitations and when the claims at issue were simple mechanical claims, in other words, not genus claims or claims employing functional language. Now, there's two independent bases for reversal of that order here. First, the original versions of the assertive claims do, in fact, satisfy the written description requirement. And second, the remainder of the specification clearly establishes that censors were not critical but rather optional and that the inventors were in possession of censor-optional units. If you can be just clear about this, there were cross motions for summary judgment, right? That's correct. And you're appealing the grant of summary judgment of invalidity. It might be the case that that should be reversed without going the next step of concluding that as a matter of law, the written description challenge fails. That is, the written description question might be a triable issue. That's true. Certainly, at a minimum, we would contend that the summary judgment order should be reversed at a minimum because factual issues exist. You need not go the further step to say as a matter of law that the specification satisfies the written description requirement in order to reverse the district court's decision. I just want to make two general points about the basis for reversal in this case, one practical and one legal. I'll start with the practical position. Both the district court's order and innovation on appeal have significantly overemphasized the role that censors play in the specification in a manner that's really not consistent with the nature and context of the invention. I want to make one point to draw that out here, and I'd refer to page 17 of innovation's brief on appeal. Here, innovation argues that the claimed units are able to automatically store prescription containers because they have censors. There's a correlation there in their argument between the censors and the unit's ability to automatically store containers. They go a step further even and root that in an inventive purpose of the invention. If you look at the specification, however, and this is at the top of column 3, the patent explains that the prior art contained units that were operable to automatically store prescription containers. The problem with those units wasn't that they lacked censors. It was that they didn't collate multiple containers by patient name. So if you look at the actual stated purposes of the invention, and this is down at the bottom of column 3 and at the top of column 4, the inventors here stated that they sought a unit that could store more than one container in a holding area, collate multiple containers for a patient in one holding area, and store a container for a patient based on a patient's name. Can I ask you, and I don't think, I'm not sure whether this is connected to the censor question, but you explain in your brief a number of times that at least a central function of this invention is that the routing of pill bottles to particular slots would be correlated to who the pill bottle was for, so that the three bottles for me would all go in the same slot, and so on. What in the claim provides for any correlation at all of item to slot? And I gather that the construction of collating, both adopted and argued for by you, is not in any way limited to that. Sure, it's true that certainly the assertive claims don't make specific reference to that functionality, collating by a patient name. I bring that up more as context in reading the specification, specifically looking into what the inventors possessed at the time they drafted the specification. And I think the specification explains that in addition to patient name, these units are also operable to collate by a prescription number or some other identifier. But the primary point being that there is an identifier attached to those, at least as the way the specification explains that the units actually work. And so going back to my point about the purposes of the invention, what's notable there is that those purposes of collating by patient name or by any sort of patient identifier don't really have anything to do with sensors, rather it's the control system that drives that functionality, because the sensors are only a binary feature, on, off, present, not present. They can't identify those particular containers as they move through the system. So they simply can't be critical to the collating function. I think once one understands that context, it does become clear that the sensors are not critical, but rather optional, or as the specification states, they serve as a security feature. Now that again, to bring full circle back to the original claims, is perfectly consistent with the fact that the original versions of the asserted claims lacked sensor limitations. It's also consistent with the inventor's provisional application, which stated that the units may contain sensors. So that's the practical point. And just to wrap up on my second point, which is more a legal one, Scrippro's positions on appeal merely require this court to follow its precedents on all the primary issues. Innovations' position in support of affirming the district court's order, however, require the court to depart from its precedents in several respects. Now that's true with respect to the original claims themselves, where Scrippro's position is the exact same position this court took in the crown packaging case with respect to the relevance of original claims. Innovations' position would have the court extend the area of pharmaceuticals case to a context that doesn't involve claims to a functionally defined genus. This court has already declined to extend the concerns set out in the area in the crown packaging case when the claims were not claims to a functionally defined genus. This court need only follow crown packaging here with respect to the original claims. Second, with respect to the issue of waiver of the original claims argument, which Innovation has raised as to that argument. Once again, this court need only follow its decisions in Harris, William Wrigley, and Interactive Gift Express. In Harris and William Wrigley, this court held that when a party presents the same concept below that it presents on appeal, waiver simply does not apply, even if the argument is presented in a different form. And that's exactly what we have here. ScriptPro's argument below is the same argument that it continues to present on appeal, both as to reasoning and conclusion. The argument that it made below had no other point but the point that ScriptPro continues to make on appeal as to the original claim. The difference is one in form only. Waiver does not apply. Even setting aside the similarity of the argument, the Interactive Gift Express case held that waiver is limited in its application and applies only at the claim or issue level, not the supporting evidentiary argument level. Once again, that's what we have here with respect to the original claims. Your Honor? Clarify something for me, if you would. I understand that the provisional application referred to censors with the term may be used. I think that's the expression. But there was a reference in the briefs. I couldn't put my hand on it, but I know it was there. To the censors not having been part of the original filed application, even though they were part of the original issued claims, those claims that contained references to the censors, how was it that the censor language made its way into what ultimately was issued as the issued patent? I want to make sure I understand your question. I may be wrong. The predicate may be wrong, but I understood from the briefs that there was a suggestion that when the application was first filed, it did not contain any claims that referred to censors, but that censor language was added to some of the claims at some point during the prosecution. Is that wrong? Yes. The original claims had the same kind of structure as the final issued claims with respect to some dependent claims calling out censors and some independent claims not calling out censors. That's exactly right. Okay. Well, I thought so, because I saw on page 4059, this is, I gather, it isn't identified, but I take it was the original application. And that does seem to have in claim 13, censors called out. And in claim 8, censors called out. It was unclear to me whether censors somehow migrated in or out of the claims. They were there the whole time is what you're telling me? That's true. Let me just restate so I make sure we're on the same page. The original application, which you are correct, in looking at the beginning of 4055, this is where claim 1 appears. Some of the claims, including the asserted claims here, in the original application lacked censor limitations, while other claims in the original application contained censor limitations. And that includes claim 7, for example, on A4056. That was a dependent claim from claim 1 in which censors were added as a dependent claim. But they were added both as dependent and independent claims. For example, when you say added, they were in the original application. They weren't added at some point during the process. Not added. They were there all along. And that really goes to the heart of what our original claims argument is. It's not simply that original claims exist in a vacuum. It's the fact that there were both claims that contained censor limitations and claims that didn't show that the inventors wouldn't have added those censor limitations to certain claims if they intended in all respects for censors to be required. Does our case law indicate that that's dispositive in your favor, or might, again, putting aside functional claim language, which this isn't, or might there still be an inquiry into whether the claims without a censor limitation can overshoot the specification by making the claims cover matter for which there are, for example, unsolved problems to achieve the central purpose of the invention? I don't think I'd go so far as to say in accordance with this court's law that it's absolutely dispositive. Certainly it's very significant. And I'm not aware certainly of any cases that are analogous to this case in which the original claims have never changed, but yet the claims were held invalid for lack of written description support. And on that one point, I guess I would just add that both the district court's position and innovation's position gives this court really nothing to hang its hat on other than an in-hector analysis of the specification. Were there any arguments about enablement? Enablement was not an issue on summary judgment. Now, in crown packaging, I mean, of course, the facts, I guess, are not necessarily the same, but if I understand correctly, in crown packaging, not only did this court reverse the grant of summary judgment against the patentee, but directed the entry of, well, not judgment, I suppose, but directed the entry in effect of summary judgment as a matter of law, a ruling as a matter of law, that there was written description. Right. I believe that's correct. And certainly we would contend that that's a proper result here, though simply not necessary for reversal of the district court's summary judgment. I see I've only got about two minutes left, so unless there's any further questions, I'll reserve the last couple minutes. Thank you. Thank you. Ms. Mitchell. May it please the Court? One basic principle governs this appeal, and that is that the purpose of the written description requirement is to ensure that the scope of the right to exclude as set forth in the claim does not overreach the inventor's contribution to the field of the art as described in the patent specification. That's exactly what has occurred here. Script Pro seeks to overreach the scope of the inventor's contribution to the field of the art as described in the patent specification. The specification discloses a collating unit that automatically stores by using sensors. It does not meaningfully disclose any other way to automate storage. Is there a claim construction here? In the record presently, no, but there was a claim construction before the district court. And what was the claim construction on Claim 1? Was it limited to sensors or did it construe it as covering sensors and non-sensors? There was no request made with respect to that particular limitation. It was not an issue. And so we're left with a claim. In other words, Script Pro did not advocate for a narrowing claim construction. What did you advocate? They clearly aren't going to advocate for a narrowing claim construction. I'm just wondering whether you advocated that Claim 1 had to be read as only limited to inventions with sensors or not. No. Because I don't see anything in it that limits it to sensors. Would you think that's a proper claim construction of 1, that it doesn't limit it to sensors? Because 7, the dependent claim, adds the sensors in. So no one has argued. Well, I know. That's why I'm asking you the question. I mean, you're presumably a patent lawyer. I mean, if you're reading this claim, does it limit the system to a device with sensors or not? I don't think so because you would have to have some kind of structure to attach that to, and I don't know what you would attach it to. I think it just broadly claims. So let's just assume that Claim 1 describes both sensors and non-sensors. Why isn't that in itself proof that it's a written description of a device without sensors? If that's a proper claim construction of Claim 1, then when that was presented as part of the original claim in the specifications, and that's all included, then that demonstrates by itself a written description, doesn't it? If I understand your question, it does not because we have to look at, I mean, the test for a written description is whether a person reading the specification would understand the inventors to have been in possession of a collating device with or without sensors. I find this very, very confusing. But the claim language of the original claim is considered part of the specification, right? Right. And so if the claim language is construed as including a system without non-sensors, and it's sufficient to disclose that, otherwise how would you get that claim construction, then why isn't that a sufficient written description? Because the court in Ariadne said it wasn't. Well, I think you have a hard time if you're relying on Ariadne. Those are genus cases and functions cases and they're not talking about a specific device. So the actual holding in Ariadne, we hold that generic language in the application as filed does not automatically satisfy the written description requirement. And so the holding there was generic language. What's generic about Claim 1, though? Sorry, I don't mean to cut you off, but Claim 1 is properly construed as disclosing both a censored invention and a non-censored invention. I don't see anything generic about that. It's generic and automatically storing. I don't know how you go about that. In order to say this by virtue of claim construction, someone would have to argue presumably that it should be construed as such and that was never argued by Scripp-Popolov, who carries the burden of showing grounds for reversal on appeal. Yes, but you share the burden by clearly convincing evidence of invalidity. And if it's properly construed, and I think we can look at what we think a proper construction of this is to include a non-censored device, I fail to see how that doesn't satisfy the written description requirement, or at the very least create a tribological effect. It simply wasn't construed to include censors. I'm sorry, I'm just not following. I know. I'm sorry. It wasn't construed to exclude them either, though. True. And so why isn't this something you send to the jury and say, does this provide a written description of a device without censors? Because that's… I mean, in order for you to prevail, you have to show that no reasonable person could read that as disclosing a device without censors. It repeatedly describes the present invention. Right, but the material would be the specification, including the original claims, and the preferred embodiment description is generally not limiting. It's a preferred embodiment. There is a little bit of language in the summary of the invention. What is it, broadly comprises, broadly includes? Broadly comprises. Broadly comprises, which is very far from precise language. It's not clear what broadly comprises means. It would be different if it said the present invention requires without a modifier, and then there would be a different kind of argument. So a person of skill in the art reading the specification, including the original claims, would say, well, this is broadly comprises. Maybe that requires every item on the list, or maybe it's a collection of items, some of which can be in any given embodiment of the invention, others not, and then you have the original claim language, which suggests maybe the inventors had the broader conception, but that would be a determination, a factual determination, I guess, as we've said, about how a skilled artisan would read that little collection of material. So there are contentions that there are positions that is unambiguous, in this case, where it's solely on the abstract and the summary of the invention, which describes the present invention, not on the preferred embodiment. The preferred embodiments are consistent with that, with the summary of the invention and the abstract, but the abstract itself says, describes the collating units as broadly comprising in the language that you were speaking of, and then the summary of the invention repeatedly says, the invention describes how sensors facilitate automating storage in the present invention. It uses a storage algorithm that is dependent on two things, and this is how they define the present invention, and that's patient name and the availability of an open storage position. Those are the two things they need to drive the storage algorithm. Right, but the computer memory could, in fact, keep track of both of those things. You don't need sensors to keep track of whether a slot is open. Although that's not how the specification describes the invention. It describes the invention, the present invention, as having a number of roles that sensors play. It states that the plurality of sensors are operable to determine the presence of the container within the collating unit. That's at A80, column 4, lines 61 through 67, and Scripp-Reeve admits this on page 13 of its reply brief. That's the second part of the storage algorithm that the summary of the invention describes as the present invention. And then the summary of the invention goes on to describe the integration of sensors with the control system via sensor controllers, the location of sensors positioned all around the holding areas. They determine whether a particular holding area is full so that the control center can determine where to place the container. Well, sometimes the word determine is used and sometimes the word confirm is used, which suggests that it's already been determined to some degree of accuracy, and the confirming is intended to bring that up to a higher degree of accuracy, which is the reason for the error message, I take it. But that suggests that it can be done without the sensors. Scripp wrote an argument based on confirming and security features. That language appears exclusively in the preferred embodiment. It's not in the summary of the invention that describes the present invention. Well, isn't that the point? That they're saying that the preferred embodiment has sensors and those sensors perform a role in the preferred embodiment that's useful but not essential. It's consistent with the way the sensors are described in the present invention, in the summary of the invention. There's actually three passages that they focus on. Two of them are in column 12. Leading up to that passage, the preferred embodiment describes the containers coming out of the collating unit on the NC conveyor. And before the container is stored, the control system executes the logic depicted in 7A and 7B based on feedback from the sensors. And this includes an error message if the sensors detect that there is an object located in the collating unit. So that's consistent with the sensors' mandatory role of determining the presence of a container in the unit as set forth in the present invention language in the summary of the invention. Can I ask you the same question I asked Mr. McCallum? The specification and his brief repeatedly, I think, make clear that the assignment of pill bottles to slots has to be, the purpose of this is to make that assignment in some way dependent on patient identity. So my question is, is there a written description problem with the fact that, or with the supposition that there is no such correlation required by the claims? You're exactly right, Your Honor, there is. But it wouldn't be the written description issue that we have in front of us here. It would be a different written description issue. This is the first time that they've maintained that the storage by a container name is critical to the invention. And if that's the case, then they have a separate written description problem on that because that's not part of the claims either. And point of fact, the present invention describes really that there's two critical pieces to the storage algorithm, and that is the patient name and availability of an open storage position. That's A80, column 4, lines 21 through 24. Those are the two things that drive the storage algorithm. Could you address briefly the question of whether there's been waiver by the appellants in this case of the written description argument that they're making here? They argue that on page 3168 of the joint appendix, they make essentially the argument they're making here, although in a very much truncated form. Do you think that that was adequate to preserve the issue that they are raising? No, I certainly don't. And whether Tenth Circuit or Federal Circuit applies to this issue, I don't think it... What's the inadequacy in that? You know the passage. It starts with... It's the second full paragraph on page 3168. And why is that not adequate to raise this issue? In support of that, as I understand it, they're citing to page A3168 in the joint appendix. That was the page on page 3168. And they say the inventors did not simply overlook censors, but rather purposefully decided to omit the censors from claims 1, 2, 4, and 8. They never presented any developed case law on this issue if that's what they were maintaining for the district court to consider. They didn't cite case law, true. But I don't know that citing case law is really necessary to preserve an issue. There'd be a lot of dead issues out there if you had to do that. There just certainly was no... There was no developed cogent argument for the district court to appreciate that that is what they were... the nature of what they were arguing there. And in fact, the district court noted that the district court did not raise this argument. Page A6 and A8, it notes 2 and 8. Well, the district court did say that. And I'm just wondering whether the district court was wrong and overlooked this passage. Perhaps understandable, I'm sympathetic with the district court's situation in having a pretty perfunctory argument before it. But nonetheless, perfunctory or otherwise, the question is, is there enough here to put the district court on notice that they are saying that the combination of the specification and the difference between the claims and dependent claims is enough to constitute reading the description? And if not, why not exactly? I certainly don't think so. We know you don't think so. I guess the question is, why should we agree with you on that point? You know, in reading that in the context of their brief, I don't think it occurred to anyone until this appeal that that's the argument. Well, I have to say it occurred to me. It seems to me to be making the argument. Now, my comment in the margin is, is this all? And that's a pretty short form of that. But why isn't it the essence of the argument? They actually argued a number of different things in connection with the written description support. Below, they pointed to Dr. Faddis' opinion. They pointed to different portions of the spec. They argued a lot of this thing. That was kind of an offhand logic argument at the end. Gosh, if we really meant to not do that, we wouldn't have drafted the claim, so we did. It really wasn't any kind of cogently developed, gosh, these are enough kind of argument. We certainly didn't understand that to be the case, and I don't think the court did either. Okay, thanks. I think your time has come to an end. I'm happy to address any other questions the court may have otherwise. All right, thank you very much. Thank you. With respect to the reference to the sufficiency of public disclosure here, I think Your Honor should know that the original claims are in fact part of the specification. So that's included in the public disclosure element, and as I've noted earlier, there's also no affirmative limiting language in this specification. Taking the point about the present invention, this court has held in the absolute software case that present invention language need not be rigidly applied to limit the scope of what the specification describes. If the remainder of the specification doesn't require it, and that's precisely the case here. It sort of depends on what follows the words present invention. As in Judge Toronto's example, if it said required, we'd have a very different case. Certainly, and the language you see following that here is the broadly comprised language, which if you dig into the actual elements that are included in this list of what broadly comprises the invention, it's pretty clear that the inventors were simply trying to list all of the various features that they might include in varying embodiments of the invention, not necessarily all in one embodiment, and we're not singling out sensors for special treatment here. There are actually other elements in those lists, for a base, for example, that don't appear in all of the claims. Concerning the control system and what it knows or how it needs to rely upon the sensors, I think column 12 of the patent, and this is on 84, pretty clearly states that as containers are stored in the collating unit, the control system of the collating unit stores such information in the memory, and as a result, an operator may at any time determine which containers are currently stored in the collating unit and the location of the containers. One point, to the extent that council inferred that we are saying that a storage of a patient name is critical to this invention, and that's not our point here. I certainly would disagree that we're taking a physician that's critical. As I explained earlier, it's simply that. That's what the specification explains is one of the primary purposes of the invention. I see I'm out of time. Thank you very much. The case is submitted. Thank you.